Filed 5/20/24  P. v. Sanders CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081370 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD294681) |
| DAVID TYRONE SANDERS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed as modified.

Kendall Dawson Wasley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Maxine Hart, Deputy Attorneys General, for Plaintiff and Respondent.

David Tyrone Sanders appeals the judgment sentencing him to prison for eight years after a jury found him guilty of attempted dissuasion of a

witness from reporting a crime, false imprisonment, and attempted unlawful taking of a vehicle. He contends the conviction of attempted unlawful taking of a vehicle must be reduced from a felony to a misdemeanor because the evidence was insufficient to establish the vehicle was worth more than $950. Sanders also contends the trial court erroneously relied on aggravating circumstances not proved beyond a reasonable doubt to impose upper prison terms. We agree with the first contention, but not the second; modify the judgment to reduce the conviction of unlawful taking of a vehicle to a misdemeanor; and affirm the judgment as modified.

I.

BACKGROUND

A.  *Facts*

At approximately 7:00 p.m. on May 12, 2022, K.C. was walking to the lot where she had parked her car, a 2011 Honda Fit, when Sanders asked her to help him set up a tent. K.C. declined and proceeded to the parking lot. Sanders followed her and closed the parking lot gate.

K.C. got into her car, drove toward the gate, and asked Sanders to open it. When Sanders refused, K.C. called 911 to report that she was being held captive in the parking lot. While she was on the phone, Sanders walked around her car and tried all the door handles. K.C. accidentally opened a window through which Sanders reached to snatch the phone and terminate the call. Sanders reached into the car a second time and grabbed and tore K.C.'s shirt. He also tried to remove the key from the ignition by pulling the lanyard to which it was attached, and in the process detached the lanyard from the key.

After Sanders stepped aside, K.C. decided to get out of the car to try to retrieve her phone and call for help. Sanders returned the phone when K.C.

2

promised to call a friend and not 911. She received a call from the 911 dispatcher, which she answered. K.C. gave the dispatcher an address and said, "Please hurry up. He's going to get my phone." Sanders again snatched K.C.'s phone from her, told her she did not need to call 911, and repeatedly called her a "bitch." He grabbed her by the shoulders and pinned her down on the hood of the car for a minute or two. K.C. screamed as she struggled to get Sanders off her.

In response to the screams, several individuals entered the parking lot and separated Sanders from K.C. When Sanders dropped K.C.'s phone during the scuffle, she picked it up and continued the call with the 911 dispatcher, who was still on the line. Sanders got into K.C.'s car and drove it toward the parking lot gate. The individuals who responded to K.C.'s screams tried to stop Sanders by surrounding the car and banging on it. When they told him it was not his car, he responded that it was his. A passing motorist who saw the commotion prevented Sanders from leaving in K.C.'s car by blocking the parking lot exit. Police arrived and apprehended Sanders.

B.    *Procedure*

The People charged Sanders with carjacking (Pen. Code, § 215; subsequent undesignated section references are to this code; count 1); attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1); count 2); false imprisonment by means of violence, menace, fraud, or deceit (§§ 236, 237, subd. (a); count 3); robbery (§ 211; count 4); and unlawful taking of a vehicle worth more than $950 (Veh. Code, § 10851, subd. (a); count 5). On count 2, the People alleged the dissuasion was accomplished by force or by threat of force or violence. (§ 136.1, subd. (c)(1).) They alleged Sanders had a prior conviction that qualified as both a serious felony that subjected him to a

3

five-year enhancement (§ 667, subd. (a)(1)) and a strike that subjected him to sentencing under the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12). The People alleged as aggravating circumstances for purposes of sentencing that Sanders had numerous and increasingly serious prior convictions (Cal. Rules of Court, rule 4.421(b)(2)), served a prior prison term (*id.*, rule 4.421(b)(3)), and previously performed unsatisfactorily on probation or parole (*id.*, rule 4.421(b)(5)).

Sanders pled not guilty to all charges and denied all allegations. The case proceeded first to a jury trial on the charged offenses and then to a separate bench trial on the allegations concerning prior convictions and aggravating circumstances for purposes of sentencing after Sanders waived his right to a jury trial on those matters.

In the jury trial, the People's theory on count 5 was that Sanders took by force and without consent K.C.'s vehicle, which was worth more than $950. Surveillance video footage showing K.C.'s vehicle moving in the parking lot and police body camera footage and photographs showing the exterior and interior of the vehicle were introduced at trial. One of the photographs included the odometer, which read 139,005 miles. No testimony or documentary evidence about the value of K.C.'s vehicle was introduced. The court instructed the jury that to prove Sanders guilty of unlawfully taking a vehicle, the People had to prove he took the vehicle without the owner's consent and with intent to deprive the owner of possession or ownership for any period of time, and the vehicle was worth more than $950. (See CALCRIM No. 1820.)

The jury found Sanders not guilty on count 1 (carjacking) and count 4 (robbery). It found him guilty on count 2 (attempting to dissuade a witness from reporting a crime), and found true the allegation he used force or threat

4

of force or violence in committing that offense. The jury found Sanders guilty of the lesser included offense of false imprisonment on count 3 (false imprisonment by means of violence, menace, fraud, or deceit) and of the lesser included offense of attempted unlawful taking of a vehicle on count 5 (unlawful taking of a vehicle).

At the bench trial, the People introduced Sanders's mug shots and fingerprint cards from the current case and from a prior case, a rap sheet, and court documents regarding his prior convictions. The People presented testimony from an expert witness that the fingerprints obtained from Sanders in the current case matched those obtained from the defendant with the same name in the prior case. The court found the People proved beyond a reasonable doubt Sanders had a prior conviction that qualified as a serious felony and a strike. It also found the People proved beyond a reasonable doubt "two of the three upper-term factors," namely, that Sanders served a prior prison term and his prior performance on probation was unsatisfactory. The court found the People did not prove beyond a reasonable doubt that Sanders's convictions were increasingly serious.

In a sentencing memorandum and at the sentencing hearing, Sanders asked the court to dismiss the allegation concerning his prior strike conviction (*People v. Superior Court* (1996) 13 Cal.4th 497 (*Romero*)), not to impose the five-year enhancement for his prior serious felony conviction, and to grant probation or to impose a "reasonable term" of imprisonment. The court dismissed the allegation concerning Sanders's prior serious felony conviction, but not the allegation concerning his prior strike conviction. In support of its decisions to deny the *Romero* motion, to deny probation, and to impose a prison term, the court referenced three aggravating circumstances identified in the probation officer's report: (1) the victim (K.C.) was

5

particularly vulnerable, in that she was alone in a "somewhat isolated area" at dusk and Sanders was "a lot bigger" than she; (2) Sanders engaged in violent conduct that indicated a serious danger to society; and (3) he was on parole when he committed the current crimes.  The court stated it was not using Sanders's prior service of a prison term and prior unsatisfactory performance on probation as grounds to deny the *Romero* motion and probation, because it "utilized those factors to find that the aggravating factors were true" and did not "want there to be any indication that there's dual usage here."

The court then sentenced Sanders to prison for the upper term of four years on count 2 (attempting to dissuade a witness from reporting a crime by force or threat of force or violence) (§ 136.1, subds. (b)(1), (c)(1)), doubled to eight years based on the prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).  The court imposed concurrent terms of 364 days on count three (false imprisonment) (§ 237, subd. (a)) and the upper term of 18 months, doubled to three years based on the prior strike conviction, on count 5 (attempted unlawful taking of a vehicle) (Veh. Code, § 10851, subd. (a); Pen. Code, §§ 1170, subd. (h)(1), 664, subd. (a), 667, subd. (e)(1), 1170.12, subd. (c)(1)).

II.

DISCUSSION

A.     *Sufficiency of Evidence of Value of Vehicle*

Sanders contends the evidence was insufficient to support a felony conviction of unlawful taking of a vehicle because the People failed to prove K.C.'s car was worth more than $950, and the failure of proof requires reduction of the conviction to a misdemeanor.  We agree.

A violation of Vehicle Code section 10851, subdivision (a) "is a 'wobbler' offense that may be punished as either a misdemeanor or a felony."  (*People v. Jackson* (2018) 26 Cal.App.5th 371, 377.)  A violation based on taking a vehicle "must be punished as a misdemeanor theft offense if the vehicle is worth $950 or less."  (*People v. Bullard* (2020) 9 Cal.5th 94, 110 (*Bullard*).)  The People bear the burden to prove the taken vehicle was worth more than $950 to obtain a felony conviction.  (*Ibid.*; *People v. Gutierrez* (2018) 20 Cal.App.5th 847, 855.)  To meet that burden, they must present evidence from which a reasonable trier of fact could find beyond a reasonable doubt the value of the vehicle exceeded $950.  (See *Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 576.)  To decide whether the People met their burden, a reviewing court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*Johnson*, at p. 578; accord, *People v. Mumin* (2023) 15 Cal.5th 176, 198–199.)

The record does not contain substantial evidence K.C.'s vehicle was worth more than $950.  The parties in their briefs cite neither testimony nor documents presented at trial concerning the value of the vehicle, and we have

7

found no such evidence in the record.  In defense of the judgment, the People argue jurors could rely on their "common knowledge" to infer from videos and photographs of the vehicle that its value exceeded $950.  Property value may be established by circumstantial evidence, and jurors may use their common knowledge to determine value.  (*People v. Grant* (2020) 57 Cal.App.5th 323, 329, 332 (*Grant*).)  "If the People seek to excuse the production of evidence by urging the fact is one of common knowledge, the following test applies.  First, 'is the fact one of common, everyday knowledge in that jurisdiction, which everyone of average intelligence and knowledge of things about him can be presumed to know; and [second,] is it certain and indisputable.'  [Citation.] '[I]f there is any reasonable question whatever as to either point, proof should be required.' "  (*People v. Davis* (2013) 57 Cal.4th 353, 360.)  The only case the People cite to support their argument, *People v. Ortiz* (2012) 208 Cal.App.4th 1354, "involved jurors' common knowledge that a two-year-old BMW generally has substantial value."  (*Grant*, at p. 332; see *Ortiz*, at pp. 1359, 1366.)  K.C.'s vehicle, however, was an 11-year-old Honda with 139,005 miles on it.  Although in the videos and photographs the vehicle's exterior and interior appear to be in good condition, the record contains no information about its mechanical condition.  We are not convinced that without some evidence of the value of K.C.'s car the jurors possessed sufficient common knowledge about used cars of unknown condition to be able to find beyond a reasonable doubt the value exceeded $950.  (See *Davis*, at p. 360; *Grant*, at p. 332.)

The failure of proof on the value element precludes a felony conviction under Vehicle Code section 10851, subdivision (a).  (*People v. Page* (2017) 3 Cal.5th 1175, 1183; *In re D.N.* (2018) 19 Cal.App.5th 898, 900.)  Sanders may only be convicted of a misdemeanor violation of the statute.  (*Bullard,*

*supra*, 9 Cal.5th at p. 110.)  This makes a difference in the term of confinement that may be imposed, but because the record clearly shows the trial court intended to impose the maximum term on each conviction, remand for resentencing is unnecessary.  (See *People v. Gastelum* (2020) 45 Cal.App.5th 757, 773; *People v. Winn* (2020) 44 Cal.App.5th 859, 872–873.)  We instead grant Sanders's request to modify the judgment to reduce his conviction to a misdemeanor.  (§§ 1181, subd. 6, 1260; *Grant, supra*, 57 Cal.App.5th at p. 332; *D.N.*, at p. 904.)  We do so by striking the concurrent three-year prison term on count 5 and imposing a concurrent maximum misdemeanor term of six months in jail.  (Veh. Code, § 10851, subd. (a) [misdemeanor violation punishable by up to 1 year in county jail]; Pen. Code, § 664, subd. (b) [attempt punishable by up to one-half term prescribed for completed crime].)

B.     *Imposition of Upper Terms*

Sanders next contends the trial court prejudicially erred by imposing upper prison terms on counts 2 and 5 based on aggravating circumstances that were mentioned in the probation officer's report but were not found true at either the jury trial or the court trial.  He asks us to vacate the sentence and to remand the matter for resentencing.  Sanders is not entitled to the requested relief.

Insofar as Sanders relies on the determinate sentencing statute (§ 1170), he did not preserve his claim of error for appeal.  He did not object to the trial court's imposition of upper prison terms or its reasons for imposing them.  The failure to object to such discretionary sentencing choices in the trial court generally forfeits a related claim of error on appeal.  (*People v. Scott* (1994) 9 Cal.4th 331, 353; *People v. Hall* (2023) 97 Cal.App.5th 1084, 1107 (*Hall*); *People v. Velasquez* (2007) 152 Cal.App.4th 1503, 1511.)

9

Sanders cannot avoid forfeiture by claiming, as he does, that the sentence was legally unauthorized.  His sentence was not one that "could not lawfully be imposed under any circumstance in the particular case."  (*Scott*, at p. 354 [defining " 'unauthorized' "].)  An upper term may be imposed "when there are circumstances in aggravation of the crime" and "the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)  Sanders does not contend the trial court lacked authority to impose an upper term under any circumstance in his case; rather, he contends the court erred in doing so by "rely[ing] on unproven and unadmitted aggravating factors."  That is a claim the upper terms, "though otherwise permitted by law, were imposed in a procedurally or factually flawed manner," which is subject to the forfeiture rule.  (*Scott*, at p. 354; see *Hall*, at p. 1107.)

Insofar as Sanders relies on his federal constitutional right to a jury trial (U.S. Const., 6th Amend. ["In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury"]; *Duncan v. Louisiana* (1968) 391 U.S. 145, 149 [imposing 6th Amend. jury trial right on states through 14th Amend.]), the claim has not been forfeited. (*People v. French* (2008) 43 Cal.4th 36, 47–48.)  We nevertheless reject it.

The claim is moot as to Sanders's conviction on count 5 (attempted unlawful taking of a vehicle).  We have reduced that conviction to a misdemeanor, and the right to a jury trial on aggravating circumstances concerns only felony sentences.  (§ 1170, subds. (a)(3), (b)(2); Cal. Rules of Court, rule 4.403.)

The claim lacks merit as to the conviction on count 2 (attempting to dissuade a witness from reporting a crime by force or threat of force or

violence). After being advised of his right to a jury trial on the aggravating circumstances that were alleged in the information and, if proved, would subject him to an upper-term sentence, Sanders personally and expressly waived his right to a jury trial. He thereby consented to a trial on that issue before the court sitting without a jury. (*Hall, supra*, 95 Cal.App.5th at p. 1098; *People v. Smith* (2003) 110 Cal.App.4th 492, 500.) At the bench trial, the court found the People had proved two "upper-term factors" beyond a reasonable doubt: (1) Sanders served a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)); and (2) his prior performance on probation was unsatisfactory (*id.*, rule 4.421(b)(5)). At the sentencing hearing, the trial court "utilized those factors to find that the aggravating factors were true" and to impose the upper prison term on count 2. Because the circumstances the court used to impose the upper term were found true beyond a reasonable doubt at a bench trial after Sanders waived his right to a jury trial, there was no Sixth Amendment violation.

We reject as based on a misreading of the record Sanders's contention the trial court used aggravating circumstances listed in the probation officer's report but not proved at the bench trial to impose the upper term on count 2. At the sentencing hearing, the court mentioned three aggravating circumstances from the probations officer's report: (1) the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)); (2) Sanders engaged in violent conduct indicating a serious danger to society (*id.*, rule 4.421(b)(1)); and (3) he was on parole when he committed the current crimes (*id.*, rule 4.421(b)(4)). The court used those circumstances to deny both the *Romero* motion and probation. The court stated it was *not* using Sanders's service of a prior prison term or unsatisfactory performance on probation for those purposes (*id.*, rule 4.421(b)(3), (5)), because it was using

11

those aggravating circumstances to impose upper terms and it did not "want there to be any indication that there's dual usage here." The court found beyond a reasonable doubt at the bench trial on aggravating circumstances that Sanders served a prior prison term and performed unsatisfactorily on probation, but it did not find the other factors mentioned in the probation officer's report. We presume the court followed the law in imposing the upper term by using the circumstances the People had proved, not those they had not proved. (See Civ. Code, § 3548 ["The law has been obeyed."]; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390 ["Absent evidence to the contrary, we presume that the trial court knew and applied the governing law."].) Sanders thus has shown no Sixth Amendment violation.

Finally, our conclusion there was no error in imposing the upper term on count 2 makes it unnecessary for us to address the parties' arguments on whether or not the alleged error was prejudicial. (*People v. Wiley* (2023) 97 Cal.App.5th 676, 679, fn. 2, review granted Mar. 12, 2024, S283326.)

III.

DISPOSITION

The judgment is modified by striking the concurrent three-year term imposed on count 5 (attempted unlawful taking of a vehicle) and imposing a concurrent term of six months. As so modified, the judgment is affirmed. On remand, the trial court shall prepare an amended abstract of judgment that makes the modification and shall forward a copy to the Department of Corrections and Rehabilitation.

IRION, Acting P. J.

WE CONCUR:

DO, J.

CASTILLO, J.

13